IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SHERMAN ANTWAN | : | |
| BROADHEAD (AIS # 00246842) | : | |
|     Plaintiff, | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 14-00216-CB-N |
| CYNTHIA D. McCOVERY, *et al.*, | : | |
|     Defendants. | : | |
| | : | |

## Report and Recommendation

Plaintiff Sherman Antwan Broadhead, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  Currently pending are Plaintiff Broadhead's Motion for Reconsideration  (docs. 58, 66) and the Answer and Special Reports filed by Defendants, Cynthia D. McCovery, Shirley Smith, Wayne Gray, Kenneth Tyus, Brandon McKenzie, James Smith, Danny Fountain, Amanuel DuBose, Alfre Pacheco, Nathan McQuirter, Anthony Gibson, and Timothy Wetzel (Docs. 36, 37), which have been converted to a Motion for Summary Judgment under Federal Rule of Civil Procedure 56 by order of the undersigned (Doc. 64).  Plaintiff has filed a response in opposition to the motion (docs. 71, 72), the Defendants have filed a reply (doc. 73) to the response, and the motion for summary judgment and the motion to reconsider are ripe for adjudication.

Under S.D. Ala. GenLR 72(b), this matter has been referred to the undersigned United States Magistrate Judge for submission of a recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(R).  For the reasons stated below, it is

recommended that Plaintiff's claims of criminal negligence be **DISMISSED** from the action; the motion for summary judgment of Defendants Wayne Gray, Amanuel DuBose, Anthony Gibson, and Timothy Wetzel be **GRANTED**; the motion for summary judgment of Defendants McCovery, Smith, Tyus, McKenzie, Smith, Fountain, Pacheco, and McQuirter be **DENIED** at this time and the claims against them shall proceed.[1]

## I.   Summary of Allegations[2]

On August 20, 2013, the Southern Region Correctional Emergency Response Team ("CERT team") entered the segregation block at Fountain Correctional Facility ("Fountain"), where Plaintiff Broadhead was housed, to conduct cell searches.  (Doc. 37 at 4).  Defendants Tyus, McKenzie, Smith, Fountain, Pacheco, McQuirter, and Gibson were members of the CERT team on the referenced date.  (Doc. 15 at 5, 12-13; Doc. 37-9 through 37-17).  At approximately 1:45 p.m. the CERT team approached Broadhead's cell and Defendant Tyus ordered Broadhead to place his hands behind his back so handcuffs could be applied prior to Broadhead exiting his cell; however, Broadhead refused to comply with the direct order and reportedly multiple orders thereafter.  (Doc. 37 at 4).  With incident ensuing, Defendant McCovery, a Lieutenant at Fountain, left the cell extraction to inform Warden Smith of Broadhead's refusal to be handcuffed and exit

---

[1] Broadhead has a second § 1983 action pending in this Court arising out of an incident alleged to have occurred on June 8, 2014.  *See Broadhead v. Earl*, S.D. Ala. Case No. 1:15-cv-00667-WS-B.

[2] The undersigned has made her "determination of facts" by "review[ing] the record, and all its inferences, in the light most favorable to [Plaintiff Broadhead,] the nonmoving party."  *E.g., Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997).

his cell (doc. 37 at 4) and returned to Broadhead's cell with a video camera to record the CERT team's extraction of Broadhead from his cell.[3]   (Doc. 37-1 at 1).

Defendants contend that after Broadhead's refusal to obey Defendant Tyus's final order to turn around and be cuffed, Tyus sprayed Broadhead with one burst of Sabre Red (mace) to the facial area.   (Doc. 37 at 5).   Defendants report that Broadhead was then compliant and handcuffs were placed on Plaintiff, that he was escorted out of his cell, placed face down on the floor so leg irons could be secured, and then he was escorted to the shower to be decontaminated.   (*Id*.).   Following the incident, Broadhead was examined by a nurse and a body chart was completed which revealed Broadhead complained he was unable to feel his leg due to the leg cuffs being too tight, that he was unable to open his eyes, and the nurse observed two small half centimeter abrasions, one on his knee and the other on his shoulder blade.   (*Id*.; Doc. 37-4).   Immediately thereafter, at approximately 2:20 p.m., Broadhead was released back to the Department of Corrections where Investigations and Intelligence ("I&I") Agents Leroy Dale and Dwight King interviewed Broadhead regarding the incident and reviewed the video captured by Lieutenant McCovery.   (Doc. 37 at 6).   Broadhead was returned to his cell at approximately 2:30 p.m. and received a charge for violation of ADOC Rule 925, Failure

---

[3]       The record contains conflicting accounts of whether or not Defendant Warden Smith was present during the cell extraction.
        Broadhead claims Warden Smith is liable for criminal negligence because she allowed CERT to enter her camp without walking with them and accompanying them during cell searches where they ultimately used excessive force against him.   (Doc. 1 at 2; Doc. 15 at 5).   And Plaintiff contends Smith first observed the incident after the cell extraction and decontamination, when he was placed in a chair in the lobby of the segregation unit.   (Doc. 72 at 3).   However, according to the ADOC incident report and the Use of Force Investigation Report, Warden Smith accompanied Lieutenant McCovery back to Broadhead's cell and was present during the video taped cell extraction.   (*See* Docs. 37-1 at 37-3).   Contrarily, Warden Smith avers she was not present at the segregation unit during the alleged incident.   (Doc. 37-7).

to obey a direct order of an ADOC employee, to which he subsequently pleaded guilty. (*Id*.; Doc. 37-5).

Contrary to the official reports in the record, Plaintiff Broadhead contends that while he was handcuffed, he was maced and hit while in his cell, that mace was further smeared in his eyes while lying facedown on the ground during the placement of leg irons, and that his wrist was injured when his handcuffs were being removed after being escorted to the shower.  (Doc. 1 at 10; Doc. 71 at 3).  Additionally, in support of his response to Defendants' motion for summary judgment, Broadhead avers that the search of his cell was conducted without incident, but following the search, the CERT team returned to his cell and used force against him in retaliation for an incident that occurred on July 2, 2013.[4]  (Doc. 72 at 2, 4).  Specifically, Broadhead claims the CERT team completed the search of his cell and proceeded to other cells, but then he heard an officer state,

> that's the one who "BIGWILL" got back here, they was talking about another officer.  That's when they said which one hit "BIGWILL" and he said BRAOADHEAD in cell (22) . . . they came back to my cell and told me to cuffup and I said for what and they look at each other laugh, and said cuffup and I said I will if yall get the camera and they laugh again and one of them walked of and came back and somebody said they got the camera and I look out of the cell and seen LT. McCovery with the camera and I put my hands out the bars and they cuffed me up.

(Doc. 72 at 3).  Once the handcuffs were secured, Broadhead claims Defendant Tyus sprayed him with mace on the back of his head while another officer held his hands. (*Id*.).  He claims the officers told him to go to the back of the cell, which he refused to do because he knew the video camera could not capture him on film in the back of the cell.

---

[4] Broadhead claims that on July 2, 2013, Officer Williams, referred to as "Big Will," "jumped on [him]."  (Doc. 72 at 4).  The record gives no substantive facts or information regarding the alleged July 2, 2013 incident.

(*Id*.).   Broadhead avers that Defendant Tyus entered his cell and attempted to push Broadhead deeper into the cell and hit Broadhead in the side with his fist, but Broadhead asserts he pushed forward in the cell and began to exit the cell.   (*Id*.)   Upon exiting, Broadhead obeyed orders to get on the floor where leg irons were placed on his ankles. (*Id*.).   Broadhead claims that while lying face down on the floor a CERT team member rubbed mace in his eyes.   (*Id*.).   Also, Broadhead claims once he was escorted to the shower, the officers were "trying to break [his] wrist by twisting the handcuffs around and telling [him] to say something now."   (*Id*.).   After the shower, Broadhead explains he was taken to the front of the segregation unit and placed in a chair for a few minutes before Warden Smith appeared.   (*Id*.).   He states, Warden Smith, along with I&I agents Dale and King then viewed the recorded video of the cell extraction.   (*Id*.).   Additionally, Broadhead avers that I&I Agent King expressed at that time that the video showed Broadhead's compliance with the CERT team's orders and King voiced concern for why Broadhead was maced.   (*Id*.).   Furthermore, Broadhead states after requesting an investigation of the incident in writing, Agents King and Dale returned to speak to him and he received an "emergency transfer" from Fountain to Kilby Correctional Facility on August 30, 2013.   (Doc. 72 at 4, 5).   Thereafter, Broadhead was transferred to Draper Correctional Facility where, on December 17, 2013, I&I Agents King and Dale again spoke with Broadhead, in a video and voice recorded conversation, and informed him they were "going to be turning in charges [of assault and criminal negligence] to the DA's OFFICE on all the officers that was involved in the incident of August 20, 2013 at Fountain."   (Doc. 72 at 4; Doc. 15 at 4).

## II.    Procedural Background

On April 29, 2014, Plaintiff Broadhead filed this civil suit pursuant to 28 U.S.C. § 1983.[5]  (Doc. 1 at 7).  He claims Defendants Cynthia D. McCovery, Warden Shirley Smith, and Captain Wayne Gray acted with criminal negligence when they allowed the CERT team to enter Fountain Correctional Facility and his cell and use excessive force against him (doc. 1 at 5; doc. 15 at 5, 11), and that Defendants Kenneth Tyus, Brandon McKenzie, James Smith, Danny Fountain, Amanuel Dubose, Alfre Pachero, Nathan McQuirter, Anthony Gibson, and Timothy Wetzel are liable for criminal negligence, using excessive force, and assault.[6]  (Doc. 1 at 6-9; Doc. 15 at 5, 10-13).  Broadhead is requesting damages in the amount of $250,000.00 and to "make sure officers do not do this to him or another inmate" again.  (Doc. 1 at 7).

Throughout this action, Broadhead has made several attempts to obtain discovery, namely "the investigation report" prepared by I&I Agents King and Dale and a copy of the extraction video with sound.  (Doc. 27, 40, 41).  The Court ordered Defendants to show cause why these items should not be produced.  (Doc. 44).  Defendants responded and produced to Plaintiff a copy of the video complete with sound but purported no investigation reported existed.  (Doc. 48).  Defendants assert "[b]ecause the facility's use of force investigation confirmed justifiable use of force was used, a request to I&I was

---

[5] Broadhead's complaint bore a signature date of April 29, 2014, and was received by the Clerk's Office on May 12, 2014.  (Doc. 1 at 7).  Absent evidence to the contrary, the Court assumes that the complaint was delivered to prison authorities for mailing on the day that Broadhead signed it. Under the "mailbox rule," "a prisoner's pro se . . . motion is deemed filed the date it is delivered to prison authorities for mailing." *Washington v. U.S.*, 243 F.3d 1299, 1301 (11th Cir. 2001).

[6] Plaintiff's complaint named Larry Bailey and Lester Mosley, alleged members of the CERT team, as defendants in this action.  (Doc. 15 at 11-12).  However, after failed attempts to serve Bailey and Mosley (doc. 23, 26, 44, 56, 59), both were voluntarily dismissed by Plaintiff from this action.  (*See* Docs. 56, 65).

not submitted." (*Id*. at 1). Defendants support this assertion with the affidavit of Eric Bascomb, the Assistant Director of the Investigations and Intelligence Division for the Alabama Department of Corrections, who avers he does not know Broadhead and that a request to I&I was never submitted to the division. (Doc. 48-1). Attached as supporting documents to Bascomb's affidavit are the Incident Report compiled on August 20, 2013 by Cynthia McCovery and Captain Wayne Gray (doc. 48-1 at 3-4), Duty Officer Report compiled on August 20, 2013 by Cynthia McCovery (doc. 48-1 at 5), the Use of Force Investigative Report compiled on August 20, 2013 by Captain Wayne Gray (doc. 48-1 at 6), and the ADOC Body Chart Documentation compiled on August 20, 2013 (doc. 48-1 at 7).

Not satisfied with the defendants' denial of the existence of a written report, Plaintiff filed a motion to compel the affidavits of I&I agents Dale and King who interviewed him. (Doc. 51). Given the denial of existence of any report by Defendants, the Court denied Plaintiff's repeated discovery requests and motions to compel reasoning,

> Broadhead has only ever asserted his conclusory belief that an I&I report of the incident exists. The Defendants' response (Doc. 48) represents otherwise. The Defendants' counsel has signed the Defendants' response and thus, under Federal Rule of Civil Procedure 11, represents that the response is not being presented for any improper purpose and that its factual contentions have evidentiary support. Broadhead has also not shown that Bascomb is incompetent to testify to the matters discussed in his affidavit. To the extent Broadhead disputes the Defendants' version of events or wishes to give his account of his interview with I&I agents, he may do so through his own sworn statements and testimony. Accordingly, it is ORDERED that Broadhead's motions to compel (Docs. 27, 40, 51) are DENIED.

(Doc. 56). Broadhead objected to the Court's denial again identifying Agents Dale and King as the I&I agents who interviewed him and held personal knowledge as to the facts

of this action and claiming that Assistant Director Bascomb would be unable to testify in court due to his lack of knowledge of Plaintiff or the facts of the complained of incident. (Doc. 58 at 2).  He further pleads the necessity of obtaining the affidavits of Dale and King in order to prove his case and survive summary judgment.  (*Id*. at 3).  This motion to reconsider is currently pending before the Court.

After a thorough review of the record, the undersigned determines these motions are ripe for consideration.

### III.   Summary Judgment Standard

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  Federal Rule of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ."  However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); *Jackson v. BellSouth Telecomms*., 372 F.3d 1250, 1280 (11th Cir. 2004).

Federal Rule of Civil Procedure 56(e) further provides:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.   The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *See Stabler v. Fla. Van Lines, Inc.*, Civ. A. No. 11-0103-WS-N, 2012 U.S. Dist. LEXIS 1637, 2012 WL 32660, at *5 (S.D. Ala. Jan. 6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).  Summary judgment is proper when "a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal

quotation marks omitted).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (internal citations omitted).  "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *AGSouth Genetics, LLC v. Cunningham*, No. CA 09-745-C, 2011 U.S. Dist. LEXIS 51790, 2011 WL 1833016, at *2 (S.D. Ala. May 13, 2011).

## IV.    Discussion

Plaintiff seeks redress for an alleged constitutional deprivation pursuant to 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983 (1994).  Plaintiff seeks monetary damages from the defendants for acts against him in violation of the Eighth Amendment of the U.S. Constitution.[7]

---

[7]    To the extent Plaintiff is proceeding against the defendants in their official capacities, those claims fail. The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998).  "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id*. (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985)).

A.     Criminal Negligence Claims

Plaintiff Broadhead asserts the claim of criminal negligence against Defendants; however, negligence is not actionable under § 1983.  *See Wilson v. Seiter*, 501 U.S. 294, 305, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).  And, Plaintiff's use of the qualifier "criminal" to describe the alleged negligence is equally insignificant for purposes of this current civil cause of action, for allegations of negligence or errors in professional judgment in any form are insufficient to sustain a constitutional claim.  *Cf. Zimmerman v. Macomber*, 95 Civ. 0882 (DAB), 2001 U.S. Dist. LEXIS 12499 (S.D.N.Y. Aug. 21, 2001).

To the extent Plaintiff uses the word "criminal" to indicate a desire to initiate a criminal prosecution against the named defendants for their conduct, Plaintiff has no interest.  It is well established that private citizens can neither bring a direct criminal action against another person nor can they petition federal courts to compel the criminal prosecution of another person.  *Maine v. Taylor*, 477 U.S. 131, 137, 106 S. Ct. 2440, 91 L. Ed. 2d 110 (1986); *see also Otero v. United States Attorney General*, 832 F.2d 141, 141 (11th Cir. 1987) ("[A] private citizen has no judicially cognizable interest in the prosecution or non-prosecution of another.").  "A decision to prosecute is within the

---

Plaintiff alleges that Defendants, all of whom were employed by the State of Alabama Department of Corrections ("ADOC") as officers or staff at J.K. Fountain Correctional Facility or another ADOC facility at the time of the incident alleged in the complaint, violated his constitutional rights.  It is well settled in this circuit that suits seeking monetary relief against state correctional officers in their official capacities are generally barred by the Eleventh Amendment.  *See Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1429 (11th Cir. 1997); *Dean v. Barber*, 951 F.2d 1210, 1215 n.5 (11th Cir.1992); *Powell v. Barrett*, 496 F.3d 1288, 1304, 1308 (11th Cir. 2007) (state defendants sued in their official capacity for monetary damages are immune from suit under the Eleventh Amendment.  Therefore, Defendants are entitled to absolute immunity from Plaintiff's claims asserted against them in their official capacities.

United States Attorney's substantial discretion . . . ."  *United States v. Ballard*, 779 F.2d 287, 295 (5th Cir.), *cert. denied*, 475 U.S. 1109, 106 S. Ct. 1518, 89 L.Ed.2d 916 (1986).

A court is precluded from ordering a prosecution by the United States Attorney based on the separation of powers doctrine and because the determination of whether to commence a prosecution is a process that was not contemplated for the courts to engage in and, therefore, the courts are not equipped to handle a prosecution.  *Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 379-82 (2d Cir. 1973) (affirming the dismissal of a complaint seeking the investigation and prosecution of persons who allegedly violated federal and state criminal statutes).  "As a general rule, the courts are not free to interfere with the prosecuting officer's discretionary decision to prosecute crime."  *United States v. Spence*, 719 F.2d 358, 361 (11th Cir. 1983).  Moreover, a federal court cannot compel state prosecutors to commence a prosecution.  *Inmates of Attica Correctional Facility*, 477 F.2d at 382-383; *accord Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n.5 (10th Cir. 1986) (holding that the federal courts "have no authority to issue [a writ of mandamus] to direct state courts or their judicial officers in the performance of their duties." (internal quotation marks omitted)).

Thus, Plaintiff Broadhead's claim of criminal negligence is not cognizable in a §1983 action and such claims should be dismissed from this complaint in its entirety.

### B.      Failure to Protect Claims

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. . . ." *E.g., Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (citation and quotations omitted).  Though, "a court may not 'serve

as *de facto* counsel for a party' or 'rewrite an otherwise deficient pleading in order to sustain an action.'" *Muhammad v. Bethel*, 430 F. App'x 750, 752 (11th Cir. 2011) (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds*, *see Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)). With that said, however, the Court has an "obligation to look behind the label of a motion filed by a *pro se* inmate and determine whether the motion is, in effect, cognizable under a different remedial statutory framework." *United States v. Jordan*, 915 F.2d 622,624–25 (11th Cir.1990). *Pro se* pleadings must be read liberally to determine whether the Court may consider them on a legally justifiable basis, even if it is other than that described by Plaintiff in his complaint. *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir.1991).

In this case, Plaintiff Broadhead asserts the claim of criminal negligence against supervisory officials at Fountain for allowing the CERT team to enter Fountain and use excessive force against him on August 20, 2013. While the Court has determined there is no such viable claim as criminal negligence in a § 1983 action, Broadhead's factual description of the criminal negligence claims against supervisory officials mirrors that of a claim of failure to protect, which is actionable in a § 1983 action. Therefore, the Court will assess Broadhead's "criminal negligence" claims against Defendants McCovery, Smith, and Gray as a claim of failure to protect.[8]

---

[8] Broadhead also asserts the claim of criminal negligence against named CERT team defendants. However, in contrast to his claims against the supervisory officials, he fails to articulate any factual support or description mimicking that of a failure to protect claim. Instead, the entirety of the claims against CERT team defendants centers solely on their alleged wrongful use of force against him. Therefore, the criminal negligence claims asserted against them do not appear to assert a claim of failure to protect and will not be extended to encompass such based on the factual description supplied by Plaintiff in his complaint and amended complaint.

In *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv.*, 489 U.S. 189, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989), the Supreme Court reiterated a state's constitutional responsibilities with regard to inmates:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs — e.g., food, clothing, shelter, medical care, and reasonable safety — it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

489 U.S. at 199-200 (citations omitted). The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment proscription of cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 832-34, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

In order to prevail on an Eighth Amendment claim, an inmate must make both an objective and a subjective showing. In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983.

14

The objective showing of a substantial risk of serious harm must amount to the infliction of "unnecessary pain or suffering upon the prisoner." *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993). This standard requires that the alleged deprivation be "objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)). The objective standard "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . ., but must be balanced against competing penological goals." *LaMarca*, 995 F.2d at 1535 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (internal quotation marks omitted)). To establish this objective element, the burden is on Plaintiff to show that at the time of his cell extraction a substantial risk of serious harm existed that would result in injury to him. *LaMarca*, 995 F.2d at 1535.

The subjective component of an Eighth Amendment claim generally "inquires whether the officials acted with a sufficiently culpable state of mind." *Sims*, 25 F.3d at 983-84 (citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). This component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834 (quotation and citation omitted). In prison conditions cases, the required state of mind for a defendant is "deliberate indifference" to an inmate's health or safety. *Id*. (citations omitted). In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

15

*Farmer*, 511 U.S. at 837.   The Court concluded that the "subjective recklessness" standard of criminal law is the test for "deliberate indifference" under the Eighth Amendment.   *Id*. at 839-40.

There is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ."   *Farmer*, 511 U.S. at 838.   It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key.   *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).   A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," "a standard that incorporates due regard for prison officials' 'unenviable task of keeping dangerous men in safe custody under humane conditions.'"   *Farmer*, 511 U.S. at 844-45 (citations omitted).   "[A] prison custodian is not the guarantor of a prisoner's safety."   *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted).   A prison official's duty under the Eighth Amendment is to ensure "reasonable safety" under the conditions inherent in a jail setting.   *See Farmer*, 511 U.S. at 844-45.   "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."   *Id*. at 834.   Prison officials must "take reasonable measures to guarantee the safety of the inmates."   *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984).

As to Defendant Captain Wayne Gray, the record is conclusive that Gray was not present during the August 20, 2013 cell extraction of Broadhead.   All parties agree that Gray did not become aware of the incident until after the alleged injuries contained in the complaint had occurred.   (Doc. 37 at 6; Doc. 37-8 at 1).   The record irrefutably confirms

that Gray did not enter the segregation unit until after the alleged incident and there are

no claims that he was forewarned of the incident.  Thus, there is no factual issue that

Gray had knowledge of any risk to Plaintiff; therefore, he cannot be held liable for failing

to protect Plaintiff.  As such, Defendant Gray should be granted summary judgment on

all claims against him and hereby dismissed from this action.[9]

As to Defendant Cynthia McCovery, the record is conclusive that she was present

with the CERT team at Plaintiff's cell, that she informed Warden Smith of Broadhead's

failure to be handcuffed, that she video taped the cell extraction, and that she witnessed

the entirety of events surrounding Broadhead's claims.  For this reason, her liability for

failing to protect Broadhead can only be analyzed after the excessive force claim is

decided, which, as discussed below, cannot be determined at this time.  Thus, the

undersigned recommends that the failure to protect claim remain, and Defendant

McCovery be denied summary judgment at this time.

As to Defendant Warden Smith, the record is unclear as to the degree of her

knowledge of and participation in the incident; specifically, the undersigned is unaware

---

[9]     Notably, supervisory officials cannot be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior*.  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003).  "In order to prevail on the merits in a § 1983 action against a defendant in his individual capacity, the plaintiff generally must show that he is personally involved in acts or omissions that resulted in the constitutional deprivation. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).  Supervisory liability can also arise under § 1983 when there is a "causal connection between the actions of the supervising official and the alleged constitutional deprivation."  *Braddy v. Florida Dep't of Labor and Emp't Sec.*, 133 F.3d 797, 801-802 (11th Cir. 1998) (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)).  The necessary causal connection "can be established when a history of widespread abuse puts the reasonable supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  The deprivations that constituted widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences."  *Id*.

    Captain Gray did not personally participate in the incident made the basis of this lawsuit, nor did he have prior knowledge of the facts to put him on notice of any need to intervene prior to the incident on August 20, 2013.  Furthermore, Broadhead has not demonstrated an affirmative causal connection between Captain Gray's actions and the alleged constitutional violation by the Cert team.

of what McCovery told Defendant Smith regarding the incident prior to the use of force

on Broadhead, whether or not Smith was present during the incident, and whether or not

the force used was justifiable or excessive.  Therefore, there remains a genuine issue of

material fact regarding the liability of Defendant Warden Smith, and it is recommended

that the claim against her for failing to protect Broadhead be denied summary judgment

at this time.

## C.      Excessive Force Claims

Plaintiff Broadhead claims Defendants Kenneth Tyus, Brandon McKenzie, James

Smith, Danny Fountain, Amanuel Dubose, Alfre Pachero, Nathan McQuirter, Anthony

Gibson, and Timothy Wetzel are liable for using excessive force against him.[10]  (Doc. 1

at 6-9; Doc. 15 at 5, 10-13).  Defendants have asserted the defense of qualified immunity

(doc. 36 at 1), which protects government actors from liability, when performing

discretionary functions, to the extent that "their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have

known."  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396

---

[10]      Defendants Amanuel DuBose, Anthony Gibson, and Timothy Wetzel submitted affidavits denying the allegations of Plaintiff's complaint and stating their lack of involvement in the complained of incident.  (*See* Docs. 37-9, 37-15; 37-16).

Anthony Gipson avers that he was working as a CERT team member on August 20, 2013, but he had no involvement in the incident as Broadhead had already been restrained by the time Gipson arrived at the scene of the incident.  (Doc. 37-9).

Timothy Wetzel avers, " I, Timothy Wetzel was not present, nor did I participate or have any knowledge of the incident described by Inmate Sherman Antwan Broadhead B/246842 on August 20, 2013 at 1:45 p.m.   I worked on B-Night Shift from 6:00 p.m. to 6:00 a.m.  I have never served as a cert team member as inmate Broadhead states."  (Doc. 37-15).

Amanuel DuBose avers that, "[o]n August 20, 2013, [he] was not assigned as a Cert Team Member as Inmate Broadhead states."  (Doc. 37-16).

These attested to statements confirm there is no material issue for trial regarding these three defendants.  Therefore, the undersigned finds they should not be a party to this suit.  It is hereby recommended that Defendants DuBose, Gipson, and Wetzel be granted summary judgment and all claims against them be dismissed.

(1982).   In *Lassiter v. Alabama A&M University*, 28 F.3d 1146 (11th Cir. 1994), the

Eleventh Circuit restated the principles governing qualified immunity cases:

> That qualified immunity protects government actors is the usual rule; **only in exceptional cases will government actors have no shield against claims made against them in their individual capacities**. . . . Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit.

28 F.3d at 1149 (internal footnote and citations omitted) (bold added).

The defendant has the initial burden of proving that he acted within the scope of

his discretionary authority.  *Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir. 1994).  To

determine whether a defendant acted within the scope of his discretionary authority, the

court must consider whether the actions of which the plaintiff complains "(1) 'were

undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of

his authority.'"  *Id*. at 1566 (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir.

1988)).  In this case, all Defendants were clearly performing within the scope of his or

her discretionary authority for purposes of establishing immunity.  *See Bailey v. Hughes,*

815 F. Supp. 2d 1246, 1264 (M.D. Ala. 2011) ("[A]ll of the following seem to constitute

the very core of a corrections officer's duties: conducting a cell search, a strip search,

using reasonable force (in the form of a shock from a TASER) on a non-compliant

inmate and then using the same force to stop the inmate from fleeing from his cell, and

confining the inmate after a disciplinary incident.").

Thus, "the burden shifts to the plaintiff to allege a constitutional violation and

show that qualified immunity is not appropriate," *Lee v. Ferraro*, 284 F.3d at 1194; *see*

*also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

The Court must determine the "threshold question," "do the facts alleged show the officer's conduct violated a constitutional right" to be free from excessive force. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  In making this determination, the Court must presume that Plaintiff's version of events is true. *See Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (The threshold inquiry is "whether plaintiff's allegations, if true, establish a constitutional violation.") (emphasis added).

To establish a constitutional violation for excessive use of force, Plaintiff must first show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, meaning Defendant's conduct "shocks the conscience," *Lumley v. City of Dade City, Fla*., 327 F.3d 1186, 1196 (11th Cir. 2003), and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992).   Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)).

In the prison security context, the factors used to determine whether there has been a violation of the Eighth Amendment are: 1) the need for the application of force, 2) the relationship between that need and the amount of force used, 3) the threat reasonably perceived, 4) any efforts to temper the severity of a forceful response, and 5) the extent of injury suffered.  *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321). The courts

recognize that corrections officials often must make decisions "'in haste, under pressure, and frequently without the luxury of a second chance.'"  *Id*. at 6 (citing *Whitley*, 475 U.S. at 320).  Therefore, "'the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  *Id*. (citations omitted).

Defendants aver that they applied reasonable force on August 20, 2013 in order to compel Broadhead's compliance to their orders.  As the moving party, Defendants bear the initial burden on summary judgment of "identifying those portions of 'the pleadings, . . . admissions on file, together with the affidavits, . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  In support of their motion for summary judgment, Defendants have presented evidence showing Plaintiff Broadhead repeatedly failed to comply with direct orders of Defendant Tyus to turn around and be handcuffed (doc. 37 at 13); that Defendant Tyus administered a one-second burst of Sabre Red spray (mace) to Plaintiff's facial area to obtain compliance (*id*.); that once Plaintiff was handcuffed he was removed from the cell and placed on the ground (*id*.); that once Plaintiff was face down on the ground, shackles were secured on his ankles (*id*.); Plaintiff was then decontaminated in the shower (doc. 37-1 at 1); Plaintiff received a body chart (doc. 37-4); Plaintiff was charged with disobeying direct orders of an officer, to which Broadhead pleaded guilty (doc. 37-5).

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant, Broadhead to show the existence of a genuine issue of material fact.  *See Stabler v. Fla. Van Lines, Inc.*, Civ. A. No. 11-0103-WS-N, 2012 U.S. Dist. LEXIS 1637, 2012

WL 32660, at *5 (S.D. Ala. Jan. 6, 2012) (citing *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991)).   Nonmovants may not rest on allegations to overcome summary judgment but must product "significant probative evidence tending to support the complaint."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citing *Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).   Therefore, Broadhead "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."   *Id.* at 256.

> [P]laintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery. We repeat, however, that the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial.

*Id.*   Additionally, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.   *Id.* at 254 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)).

In attempt to overcome summary judgment, Plaintiff Broadhead asserts that he disobeyed Defendant Tyus' command to turn around and be handcuffed because he feared the CERT team approached his cell and attempted to extract him from his cell in retaliation for an incident that occurred between Broadhead and another officer in June of 2013.  (Doc. 72 at 1-2).  Broadhead contends he demanded his cell extraction be video taped, and he refused to comply with the CERT team's orders until Defendant McCovery was present at his cell with the video camera.  (*Id.* at 3).  He avers that after being handcuffed, Defendants entered his cell and sprayed mace on him and hit him; after exiting the cell and being placed face down on the floor, he claims Defendants rubbed

mace into his eyes; once in the shower, he alleges Defendants intentionally twisted the cuffs on his wrists in attempt to break or harm his wrists and in doing so damaged a ligament. (Doc. 1 at 10).

In considering this motion for summary judgment, the Court has reviewed the submitted video of Broadhead's cell extraction and finds it to be inconclusive evidence as support for either party. As Broadhead asserts in his motion to compel (doc. 40), the three minute and eighteen second video lacks sound throughout most of its entirety, leaving the Court unaware of the order(s) that were given to Broadhead prior to his compliance, to arguable insubordination, or aggressive conduct on the part of either party. Furthermore, the details of either party's conduct are unobservable as the video is blurry and is captured from several feet away and at an angle which barely includes the front of Broadhead's door. Adding to the difficulty of deciphering the specifics of Broadhead's cell extraction is the fact that the video camera shifts back and forth from vertical to horizontal viewpoints several times throughout the captured video, making it impossible to view the full happenings of the cell extraction.

Broadhead is shown in the video placing his hands through the tray slot and being handcuffed seemingly without incident, but a struggle of some degree ensues after the CERT team member(s) enter his cell. Broadhead then appears to lie on the floor without protest and his exclamations of mace in his eyes are not heard until he is on the ground. However, it is unclear whether this illustrates the veracity of Broadhead's claims or a mere result of the intermittent sound and poor quality of the captured video. Additionally, the video ends with Broadhead entering the shower and fails to capture the removal of his handcuffs. Thus, the video evidence currently before the Court is

unconvincing, lacking in probative value, and inadequate to determine the dispute regarding genuine issues of material facts for purposes of this motion for summary judgment.

Additionally, in evaluating the issues surrounding this motion for summary judgment, the Court has thoroughly examined Broadhead's version of events against Defendants'. Broadhead asserts that I&I Agents King and Dale reviewed the videotape of the cell extraction and interviewed him following the incident (doc. 15 at 4; doc. 72 at 4), that the I&I agents had him transferred to another facility within ten days (doc. 72 at 4), and that following his transfer from Fountain, the I&I agents returned to speak with him and, in a recorded conversation, informed Broadhead that they were turning over information to the District Attorney's Office for possible charges to be brought regarding the August 20, 2013 incident. (*Id.* at 4-5).

Defendants deny that the I&I division investigated the August 20, 2013 incident because the facility determined the force used to extract Plaintiff from his cell was appropriate and justified (doc. 44 at 1); Defendants support this contention with the affidavit of Eric Bascomb, the Assistant Director of the Investigations and Intelligence Division for the Alabama Department of Corrections. (Doc. 48-1). However, the record submitted by Defendants is, at best, conflicting regarding this assertion and, at worst, belies their assertion as the Incident Report (docs. 37-1; 48-1 at 3), Duty Officer Report (docs. 7-2; 48-1 at 5), and Use of Force Report (docs. 37-3; 48-1 at 6) compiled on August 20, 2013, all maintain that subsequent to the complained of incident Broadhead was interviewed by Investigators Dale and King. (*See* Docs. 37-1 at 2; 37-2 at 1 ("Investigators Dale and King interviewed Inmate Broadhead concerning the incident and

reviewed the recorded video.") and Doc. 37-3 at 3 ("At approximately 2:20 I&I Investigators Leroy Dale and Dwight King interviewed inmate Broadhead and viewed the video provided by Lt. McCovery." )).

Plaintiff Broadhead has petitioned, multiple times, to obtain the I&I report and/or affidavits from Investigators Dale and King. (*See* Docs. 27, 40, 41, 51). However, his requests have generally been denied. (*See* Doc. 56). However, Broadhead has filed a motion to reconsider his request(s) and maintains that Investigators Dale and King possess facts that support his claims and they, not Assistant Director Eric Bascomb, are privy to details and evidence necessary to overcome summary judgment. (Docs. 58, 66). Broadhead has consistently claimed from the onset of this action that he was interviewed by I&I agents following the August 20, 2013 incident, and he has provided the names of the I&I agents as well as dates associated with his interactions with them. While the undersigned acknowledges that at this stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997), "[s]ummary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery." *Snook v. Trust Co. of Ga.*, 859 F.2d 865, 870 (11th Cir. 1988).

It is obvious from the record that the evidence submitted by Defendants and the facts claimed by Broadhead are conflicting, and at this juncture of summary judgment, it is not the Court's function "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

> The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits. *Parrish v. Board of Commissioners of the Alabama State Bar*, 533 F.2d 942, 948 (5th Cir.1976). If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials. *Id*. Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests. *Cowan v. J.C. Penney Company, Inc.*, 790 F.2d 1529, 1532 (11th Cir.1986).

*Id*. at 870. While Defendants have responded to Broadhead's request for some discovery (reproducing the dvd copy the cell extraction and the affidavit of Eric Bascomb), the Court cannot say from the record that the responses were complete or that Broadhead had an "adequate opportunity" to discover or produce the facts necessary to justify Defendants' motion for summary judgment. For instance, the Court notes that the affidavit of Eric Bascomb denies the existence of any I&I investigation report; however, the exhibits attached to Bascomb's affidavit (the Incident Report, Duty Officer Report, and Use of Force Investigation Report) confirm that Investigators Dale and King reviewed the video taped cell extraction and spoke with Broadhead following the August 20, 2013 incident. (*See* Doc. 48-1 at 3-6). Although a written report may fail to exist, the Court finds that the affidavits of Dale and King seem relevant to Broadhead's case and, barring a valid showing from Defendants to the contrary, seem discoverable as the evidence produced may establish a genuine issue of material fact. Therefore, to grant or deny summary judgment with a potentially inadequate record seems improper. *See* Fed. R. Civ. P. 56(d)(1) ("If a nonmovant shows … that, for specified reasons, it cannot present facts essential to justify its opposition, the court may … deny" a motion for summary judgment). The undersigned thus recommends summary judgment be denied as

to Defendants Tyus, McKenzie, Smith, Fountain, Pacheco, and McQuirter, and summary judgment should be granted as to Defendants Dubose, Gipson, and Wetzel, as it has been determined they did not participate in the August 20, 2013 incident in question.

### D.   Assault Claims

Broadhead brings the state law claim of assault against Defendants (doc. 15 at 5, 10-13), and Defendants assert that they are entitled to immunity from the liability of the same.  (Doc. 36 at 1).  Alabama law recognizes at least two types of immunity from suit or liability for the individual executive acts of public officers.  *Sheth v. Webster*, 145 F.3d 1231, 1236 (11th Cir. 1998).  The first is absolute "state-agent" immunity, which is afforded to certain state constitutional officers.  *Id*. ("[A]bsolute 'sovereign' immunity . . . [is] afforded to certain state constitutional officers, including sheriffs and deputy sheriffs.") (citing *Tinney v. Shores*, 77 F.3d 378 (11th Cir. 1996) and Art. I, Sect. 14 of the Ala. Const. of 1901)).   The second type of immunity, described as "discretionary function" immunity, is not absolute and applies when a state officer or employee commits a tort while engaged in the exercise of a discretionary function.  *Taylor v. Shoemaker*, 605 So.2d 828, 831 (Ala. 1992) (citing *Sellers v. Thompson*, 452 So.2d 460 (Ala. 1984).

The relevant Alabama statute establishing discretionary function immunity is Ala. Code 6-5-338(a) (1975), which reads:

> Every peace officer...who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof...shall at all times be deemed to be officers of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.

Under the discretionary function immunity analysis, the court must first determine if Defendants were performing a discretionary function when the alleged wrong occurred. *Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003).  Discretionary acts are "those acts as to which there is no hard and fast rule as to the course of conduct that one must or must not take and those acts requiring exercise in judgment and choice and involving what is just and proper under the circumstances." *Id*. at 883; *see also L.S.B. v. Howard*, 659 So.2d 43, 44 (Ala. 1995).  If the court finds that Defendants were performing a discretionary function, then the burden shifts to Broadhead to demonstrate that the defendants acted in "bad faith, with malice or willfulness." *See Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003); *see also Sheth*, 145 F.3d at 1238-1239.  "Acts of such a nature are not considered to be discretionary." *Wright v. Wynn*, 682 So.2d 1, 2 (Ala. 1996).

As discussed above, the undersigned finds that Defendants' cell extraction of Broadhead was a discretionary act for immunity purposes.  Therefore, the burden now shifts to Broadhead to prove that CERT team Defendants acted in bad faith, with malice or willfulness in extracting him from his cell.  *See Wood*, 323 F.3d at 883.  Broadhead argues that the CERT team approached his cell and attempted to remove him from his cell for retaliatory purposes.  (Doc. 72).  He avers CERT team members returned to his cell after it had been searched and asked him to cuff up; when he asked why, Broadhead claims they laughed at him. (Doc. 72 at 2).  He claims he demanded they produce a video camera and tape the extraction before he agreed to be handcuffed.  (*Id*.).  Once the video camera was filming, he maintains he was compliant with all orders given.  (*Id*.).  Additionally, he claims CERT team members taunted him while he was in the shower,

"telling [him] to say something now, and they was saying you aint shit like your brother, he will hit back. . . ." (*Id*. at 3).

Based on these facts, a reasonable jury could find that Defendants used force against Broadhead in bad faith.  Furthermore, as discussed above, the events giving rise to and the amount of force used which are relevant to the determination of excessive force and thereby assault are in dispute, as there remains a genuine issue of material fact as to whether Defendants' use of force was "so egregious as to amount to willful or malicious conduct or conduct engaged in bad faith."  *See Ex parte City of Tuskegee*, 932 So.2d 895, 904 (Ala. 2005); *see also Ex parte City of Gadsden*, 781 So.2d 936, 938 (Ala. 2000).  As set forth above, the same reasons that lead this court, at this time, to deny federal qualified immunity to Defendants, could lead a reasonable jury to find that Defendants' use of force was, willful malicious or engaged in bad faith.

Accordingly, the Defendants' motion for summary judgment is DENIED as to the remaining CERT team Defendants as to the state law claim of assault.

### V.   Conclusion and Recommendation

In accordance with the foregoing analysis, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part, such that the operative Amended Complaint (Doc. 15) be **PARTIALLY DISMISSED** as follows:

1.   Summary Judgment is **GRANTED** in favor of Defendants Wayne Gray, Amanuel DuBose, Anthony Gibson, and Timothy Wetzel, and all claims against them are to be **DISMISSED**.

2.      Plaintiff's claims of criminal negligence are to be **DISMISSED** in their entirety**.**

3.      Summary Judgment is **DENIED** as to Defendants Cynthia McCovery and Shirley Smith; claims of failure to protect remain against them in their individual capacities.

4.      Summary Judgment is **DENIED** as to Defendants Tyus, McKenzie, Smith, Fountain, Pacheco, and McQuirter; claims of excessive force and assault remain against them in their individual capacities.

### Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P 72(b).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the

disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 25th day of February 2016.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

31